IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN WHITAKER,<br><br>    Plaintiff,<br><br>  v.<br><br>KK LLC,<br><br>    Defendant. | Case No. 20-cv-06877-MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DISMISSING FIRST AMENDED COMPLAINT WITHOUT LEAVE TO AMEND** |

Before the Court is defendant KK LLC's ("KK LLC") Motion, filed April 16, 2021, "to Dismiss Plaintiff's First Amended Complaint." Plaintiff Brian Whitaker ("Whitaker") has filed opposition, to which KK LLC has replied. Having considered the papers submitted in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

Whitaker, a quadriplegic who uses a wheelchair for mobility, alleges he "planned on making a trip in September of 2020 to the San Francisco area" (see First Am. Compl. ("FAC") ¶¶ 1, 14), and, in "seeking to book an accessible room," visited the "website reservation site" ("Website") for the Ramada Limited Hotel ("Hotel"), located at 721 Airport Blvd., South San Francisco, California (see id. ¶¶ 2, 15-16). Whitaker alleges the Website "is either maintained and operated by . . . defendant or is run by a third party on . . . defendant's behalf." (See id. ¶ 17.)

According to Whitaker, he "would like to patronize [the Hotel] but is deterred from doing so because of the lack of detailed information through the hotel's reservation

---

[1] By order filed April 12, 2021, the Court took the matter under submission.

system." (See FAC ¶ 39.) In particular, Whitaker alleges, the Hotel, on its Website, "has done nothing more than slap the word 'accessible' on all the public areas of the hotel" (see id. ¶ 19) and, while the Website "provided some actual details" about the specific room he thought "looked promising," specifically, the "1 King Bed, Mobility Accessible Room, Non-Smoking," the Website "d[id] not provide description or details" concerning the bed, toilet, and sink "that would permit [him]—or any wheelchair user—to make an independent assessment about whether it works for them" (see id. ¶¶ 22-23, 28).

Based on the above allegations, Whitaker asserts two Causes of Action, titled, respectively, "Violation of the Americans with Disabilities Act of 1990" and "Violation of the Unruh Civil Rights Act."

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be

2

enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

By the instant motion, KK LLC seeks dismissal of the FAC in its entirety, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court addresses each Cause of Action, in turn.

**A.   First Cause of Action**

In the First Cause of Action, Whitaker alleges KK LLC violated the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 1201, et seq., specifically, 28 C.F.R. § 36.302(e)(1) ("the Reservations Rule"), a regulation promulgated thereunder. In particular, Whitaker argues, KK LLC, in violation of the Reservations Rule, failed to provide the following accessibility information on its Website: (1) whether "the accessible guestrooms provide at least 30 inches of maneuvering clearance on the sides of the beds" (see Opp. at 16:17-19; see also FAC ¶ 29); (2) whether the "seat height" of toilets in the accessible guestrooms "is between 17-19 inches" (see Opp. at 17:1-3; see also FAC ¶ 31); (3) whether "[t]he sink provides knee clearance of at least 27 inches high for at least 8 inches in depth, the plumbing is wrapped, and the mirror's lowest reflective edge is no more than 40 inches in height" (see Opp. at 17:21-24; see also FAC ¶ 30).[2][3]

In response, KK LLC contends the Website (see FAC ¶ 19; Defs.' Req. for Judicial

---

[2] Whitaker asserts reservation websites must provide additional accessibility information concerning doorways, toilets, and baths/showers (see Opp. at 18:6-14; see also FAC ¶ 24), but acknowledges the Website provides such information (see, e.g., FAC ¶ 25 (alleging Website "stated that the guest room doorways were 32 inches of clear width")).

[3] Although Whitaker also alleges KK LLC "failed to ensure that individuals with disabilities can make reservations for accessible guest rooms during the same hours and in the same manner as individuals who do not need accessible rooms" (FAC ¶ 45), he fails to plead any facts in support of that conclusory allegation. See Iqbal, 556 U.S. at 678 (holding "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not suffice to state claim for relief).

3

Notice ("RJN") Ex. 4) provides "more information about the Hotel's accessibility than the Reservations Rule, as construed by the 2010 Guidance, requires" (see Mot. at 8:12-13).[4]

As set forth below, the Court agrees.

The Reservations Rule provides, in relevant part:

> A public accommodation that owns, leases (or leases to), or operates a place of lodging shall, with respect to reservations made by any means, including by telephone, in-person, or through a third party[,] . . . [i]dentify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs.

See 28 C.F.R. § 36.302(e)(1).

On September 15, 2010, the Department of Justice ("DOJ") published a Guidance regarding the Reservations Rule ("2010 Guidance"), which Guidance states, "a reservations system is not intended to be an accessibility survey." See 28 C.F.R. Pt. 36, App. A, "Guidance on Revisions to ADA Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and Commercial Facilities" [hereinafter "28 C.F.R. Pt. 36, App. A"]. The 2010 Guidance also states:

> For hotels that were built in compliance with the 1991 Standards, it may be sufficient to specify that the hotel is accessible and, for each accessible room, to describe the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g., two queen beds), the type of accessible bathing facility (e.g., roll-in shower), and communications features available in the room (e.g., alarms and visual notification devices). Based on that information, many individuals with disabilities will be comfortable making reservations.
> . . .
> [O]nce reservations are made, some hotels may wish to contact the guest to offer additional information and services. Or, many individuals with disabilities may wish to contact the hotel or reservations service for more

---

[4] The Court GRANTS KK LLC's Request for Judicial Notice of the following two documents: (1) the Consent Decree entered in United States v. Hilton Worldwide Inc., No. 10-1924, Doc No. 5 (D.D.C. Nov. 29, 2010) (see RJN Ex. 1) and (2) the "accessible guestroom description" provided on the Website (see RJN at 2:6-9; RJN Ex. 4). See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (holding courts "may take judicial notice of court filings and other matters of public record"); United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) (holding courts "may consider . . . documents incorporated by reference in the complaint . . . without converting [a] motion to dismiss into a motion for summary judgment").

4

> detailed information. At that point, trained staff (including staff located on-site at the hotel and staff located off-site at a reservations center) should be available to provide additional information such as the specific layout of the room and bathroom, shower design, grab-bar locations, and other amenities available (e.g., bathtub bench).

See id.[5]

As KK LLC points out, "[t]he DOJ's interpretation of its ADA implementing regulations is entitled to controlling weight unless it is plainly erroneous or inconsistent with the regulation," see Fortyune v. City of Lomita, 766 F.3d 1098, 1104 (9th Cir. 2014) (internal quotation and citation omitted), and Whitaker does not contend, nor is there anything else to suggest, the 2010 Guidance is either plainly erroneous or inconsistent with the Reservations Rule. Further, even assuming, as Whitaker contends, the 2010 Guidance should not be afforded deference unless the Reservations Rule "is uncertain or ambiguous" (see Opp. at 22:15-18), Whitaker himself has characterized the task of interpreting the Reservations Rule as an "issue of first impression before this Court" and purports to have "taken a stab at a fair construction of the statute" (see id. at 1:9-12; 14:7-9). In any event, irrespective of any such arguable concession of ambiguity, and "[l]ooking solely at the language of the regulation," which requires hotels to describe their accessible features in "enough detail" to "reasonably permit" individuals with disabilities to assess whether a given hotel meets their accessibility needs, "it is far from clear what constitutes 'enough' detail or when an individual's demand for more information is 'reasonable.'" See Love v. Wildcats Owner LLC, No. 20-CV-08913-DMR, 2021 WL 1253739, at *4 n.1 (N.D. Cal. Apr. 5, 2021) (internal citation omitted) (holding "the Reservations Rule on its own is ambiguous and the DOJ's interpretation of the regulation is entitled to deference").

Consequently, the Court finds, contrary to Whitaker's argument, "the [2010]

---

[5] Although the 2010 Guidance also identifies the accessibility information "older hotels with limited accessibility features" should provide on their reservation websites, see 28 C.F.R. Pt. 36, App. A, there is no dispute that the hotel here at issue is not an "older hotel."

Guidance is entitled to substantial deference." See Arroyo v. AJU Hotel Silicon Valley LLC, No. 20-cv-08218-JSW, Doc. No. 24, at 4:9-12 (N.D. Cal. Mar. 16, 2021) (citing Kohler v. Presidio Int'l, Inc., 782 F.3d 1064, 1069 (9th Cir. 2015)).

Nor is the Court persuaded by Whitaker's argument that the information identified in the 2010 Guidance, i.e., "the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g., two queen beds), the type of accessible bathing facility (e.g., roll-in shower), and communications features available in the room (e.g., alarms and visual notification devices)," see 28 C.F.R. Pt. 36, App. A, is, in this instance, insufficient. In particular, although, as Whitaker points out, the 2010 Guidance states the information identified therein "may be sufficient" and that the DOJ "cannot specify what information must be included in every instance," see id., the 2010 Guidance "makes clear that details about a hotel's accessible features . . . can be provided once reservations are made," and, indeed, expressly states "a reservations system is not intended to be an accessibility survey," all of which "provides . . . support that websites need not include all potentially relevant accessibility information," see Love v. Marriott Hotel Servs., Inc., No. 20-CV-07137-TSH, 2021 WL 810252, at *7-8 (N.D. Cal. Mar. 3, 2021) (internal quotation and citation omitted) (finding defendant's reservation website, which "provide[d] the information contemplated by the 2010 Guidance," complied with Reservations Rule; noting, "if a website was required to have all relevant information, individuals would not need to call the hotel to get further information" (internal quotation and citation omitted)).

Moreover, shortly after the Reservations Rule was enacted, the DOJ, in an ADA enforcement action, took a position consistent with the foregoing analysis. Specifically, on November 29, 2010, the DOJ and Hilton Worldwide Inc. ("Hilton") entered into a consent decree ("HWI Consent Decree"), whereby Hilton was required, on its reservation websites, to provide "the same guestroom accessibility information enumerated in [the] 2010 Guidance." See Marriot Hotel Servs., 2021 WL 810252, at *7-8 (finding "the [HWI] Consent Decree tracks the requirements of the Reservations Rule," thereby providing "further indication of the DOJ's consistent position concerning the accessibility

information required to comply with the Reservations Rule"; rejecting plaintiff's argument that "the Consent Decree never mentions the relevant regulation, never cites or uses the regulatory language, and was a settlement agreement reached . . . almost half a year before the regulation . . . bec[ame] effective and enforceable"); see also RJN Ex. 1 ¶ 25(a). Since that time, more than ten years have elapsed, and, during that rather extensive period of time, the DOJ has given no indication that providing additional information is necessary.

The Court next turns to the question of whether the Website here at issue provides sufficient accessibility information under the Reservations Rule as interpreted by the 2010 Guidance. In that regard, the Website lists "ACCESSIBLE AMENITIES" for "1 KING BED, MOBILITY ACCESSIBLE ROOM, NON-SMOKING" as follows: (1) "Adjustable Height Hand-Held Shower Wand," (2) "Bathtub Grab Bars," (3) "Bedroom is Wheelchair Accessible," and (4) "Raised Toilet Seat with Grab Bars" (see RJN Ex. 4), and, on a separate webpage, lists fourteen additional "Accessible Amenities," including "Accessible Business Center," "Accessible Front Desk," "Accessible Guest Room Doorways with 32" Clear Width," "Staff Trained in Service to Guests with Disabilities," "TTY Devices for Guest Use," and "TVs with Closed Captioning" (see FAC ¶ 19).

As KK LLC points out, the Website provides more accessibility information of potential concern to Whitaker than the information identified in the 2010 Guidance, and a number of district courts in this Circuit have granted motions to dismiss where the claims were brought by plaintiffs who, like Whitaker, have limited mobility, and the websites at issue therein provided less information regarding limited-mobility accessibility than that provided here. See, e.g., Love v. W by W Almaden Expy I, LLC, No. 20-cv-07807-SVK, Doc. No. 24 at 6:3-13 (N.D. Cal. Apr. 9, 2021); Garcia v. E.L. Heritage Inn of Sacramento, LLC, No. 2:20-cv-02191-JAM-AC, 2021 WL 1253346, at *1 (E.D. Cal. Apr. 5, 2021). Further, although, as Whitaker points out, the Hotel describes various features using only the term "accessible," he fails to cite any authority holding such description is, under the Reservations Rule, insufficient, and, indeed, numerous federal district courts

have held to the contrary. See, e.g., Garcia v. Gateway Hotel L.P., No. CV 20-10752 PA (GJSx), 2021 WL 936176, at *4 (C.D. Cal. Feb. 25, 2021) (collecting cases) (rejecting plaintiff's argument that "claiming something is 'accessible' is a conclusion or opinion"; finding "[d]efendant's use of the term 'accessible' is not merely conclusory, it means that the features in the hotel defined by [d]efendant as 'accessible' comply with the [ADA Accessibility Guidelines]").

The Court thus finds the Website provides sufficient accessibility information under the Reservations Rule.

Accordingly, the First Cause of Action is subject to dismissal, and, given the above findings, any amendment would be futile; consequently, such dismissal will be without leave to amend. See Gadda v. State Bar of Cal., 511 F.3d 933, 939 (9th Cir. 2007) (holding dismissal without leave to amend is proper where amendment would be futile); see also, e.g., Gateway Hotel L.P., 2021 WL 936176, at *5 (dismissing operative complaint without leave to amend; finding defendant's reservation website complied with ADA and, "[t]hus, . . . any future amendment would be futile").

**B.      Second Cause of Action**

In the Second Cause of Action, Whitaker asserts KK LLC violated the Unruh Civil Rights Act, Cal. Civ. Code §§ 51-53, "by . . . failing to comply with the ADA with respect to its reservation policies and practices." (See FAC ¶ 48.) Whitaker's Second Cause of Action is predicated on the First Cause of Action and, as discussed above, the First Cause of Action is subject to dismissal.

Accordingly, the Second Cause of Action is subject to dismissal, see Whitaker v. Body, Art & Soul Tattoos L.A., LLC, 840 F. App'x 959, 961 n.2 (9th Cir. 2021) (holding, "[b]ecause [plaintiff] did not adequately allege a violation of the ADA, he necessarily has not adequately alleged a violation of the Unruh Civil Rights Act"), and, as with the First Cause of Action, such dismissal will be without leave to amend.

//

//

8

**CONCLUSION**

For the reasons stated above, the Motion to Dismiss is hereby GRANTED, and the instant action is hereby DISMISSED.

**IT IS SO ORDERED.**

Dated: April 29, 2021

_____
MAXINE M. CHESNEY
United States District Judge